IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SCOTT LUPOLE,                              )
                                           )
    Plaintiff,                             )
                                           )
        v.                                 )     Civil Action No. 07-73 Erie
                                           )
COLLINS PINE COMPANY,                      )
a subsidiary of the Collins Company,       )
t/d/b/a Kane Hardwood Division             )
of Collins Pine Company,                   )
                                           )
    Defendant.                             )

## Opinion

Presently before the Court is Plaintiff Scott Lupole's motion to remand this action to the Court of Common Pleas of McKean County, Pennsylvania (Doc. 7). For the reasons set forth below we will grant the motion to remand.

### I. Relevant Background

Plaintiff Scott Lupole was employed by Defendant Collins Pine Company from on or about June 2, 1981, until March 3, 2006, when he was fired by the Defendant. (Complaint, at ¶¶ 3, 5- 6.) Defendant's stated reasons for firing Mr. Lupole was because he had "doctored" hours, however this reason is false, fraudulent and without merit. (Complaint, at ¶ 6.)

Mr. Lupole also contends that the Defendant posted at its place of business an announcement of the reasons for Mr. Lupole's termination, and that members of management made unspecified statements to Mr. Lupole's former coworkers. (Complaint, at ¶¶ 8-9.) Mr. Lupole contends that this conduct was defamatory and caused him embarrassment and humiliation. (Complaint, at ¶¶ 8-9.)

Mr. Lupole was able to gain a similar position at ITL Lumber despite his termination. (Complaint, at ¶ 7.) However, his new salary was $13,000 less than he was making at

Collins Pine Company. (Complaint, at ¶ 7.) When he was terminated from Collins Pine Company Mr. Lupole's annual salary was $41,000. (Complaint, at ¶ 7.) His current annual salary with ITL Lumber is $28,000. (Complaint, at ¶ 7.)

Mr. Lupole alleges that he has suffered lost income and benefits, damage to his reputation, and emotional pain and suffering. In his "Wherefore" clause he states that he seeks a judgment "in an amount in excess of $25,000, together with interest, costs and an award of punitive damages, which exceeds the jurisdictional amount requiring arbitration by local rule." Specifically with regard to his claim for punitive damages, Mr. Lupole claims that the Defendant's actions were willful and malicious and undertaken for the purpose of causing injury and emotional anguish. (Complaint, at ¶ 12.)

On April 2, 2007, Mr. Lupole filed a Complaint against Defendant Collins Pine Company in the Court of Common Pleas of McKean County, Pennsylvania. On April 18, 2007, Defendant removed the action to federal court contending that jurisdiction is proper in this court based on the diversity of citizenship of the parties. (Notice of Removal, at ¶ 5.) On May 18, 2007, Plaintiff filed a Motion to Remand contending that diversity jurisdiction is lacking because the amount in controversy does not meet the jurisdictional amount, and because complete diversity is lacking in that Defendant is a citizen of Pennsylvania with its principal place of business in Pennsylvania. Defendant filed a response opposing remand on May 24, 2007.

**II.**

Pursuant to section 1441(a) of Title 28, a defendant may remove a state court action to federal court if the district court could have exercised original jurisdiction over the action. Here, Defendant removed the action contending that subject matter jurisdiction is proper based on diversity jurisdiction. Pursuant to section 1332(a) of Title 28 of the United States Code, subject matter jurisdiction grounded on diversity requires that the plaintiff and defendant be citizens of different states and that the amount in controversy between the parties

exceed $75,000. 28 U.S.C. § 1332(a). A "defendant will be able to remove the case to federal court by 'show[ing] to a legal certainty that the amount in controversy exceeds the statutory minimum[.]'" *Morgan v. Gay*, 471 F.3d 469, 474 (3d Cir.2006), quoting *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 398 (3d Cir. 2004). The United States Court of Appeals for the Third Circuit recently provided the following "three main instructions" regarding removal based on diversity jurisdiction:

> 1) The party wishing to establish subject matter jurisdiction has the burden to prove to a legal certainty that the amount in controversy exceeds the statutory threshold; 2) A plaintiff, if permitted by state laws, may limit her monetary claims to avoid the amount in controversy threshold; and 3) Even if a plaintiff states that her claims fall below the threshold, [the court] must look to see if the plaintiff's actual monetary demands in the aggregate exceed the threshold, irrespective of whether the plaintiff states that the demands do not.

*Morgan*, 471 F.3d at 474-75.

When the amount in controversy is not specified in the complaint, the court must assess the claims and attempt to translate those claims into monetary sums. *Samuel-Bassett*, 357 F.3d at 398-99. "[T]he amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir.1993). In the present case the amount in controversy is not specified in the complaint and thus "the plaintiff's pleadings are not dispositive under the legal certainty test." *Morgan*, 471 F.3d at 475. In such circumstances, *Morgan* instructs that the court's "task is to examine not just the dollar figure offered by the plaintiff but also [his] actual legal claims." *Id.* The removal statute is strictly construed and all doubts should be resolved in favor of remand. *Samuel-Bassett*, 357 F.3d at 403; *Boyer v. Snap-On Tools*, 913 F.2d 108, 111 (3d Cir. 1990). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Collins Pine Company as the removing party "has the burden to prove to a legal certainty that the amount in controversy exceeds the statutory threshold." *Morgan*, 471 F.3d at 474; *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 222 (3d Cir.1999). In this

regard, Defendant states in its notice of removal that

> Plaintiff seeks damages in excess of $25,000 "together with . . . an award of punitive damages." This unliquidated claim for punitive damages meets the amount in controversy requirements for federal subject matter jurisdiction as a matter of law: "If [punitive damages are recoverable as a matter of governing substantive law], the court has subject matter jurisdiction unless it is clear beyond legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount." 15 Moore's Fed. Pract. § 102.106(4) (Matthew Ben

(Notice of Removal, at ¶ 4.) Defendant argues that it is "black-letter law" that where a plaintiff asserts a claim for punitive damages "'[i]f punitive damages are available under the Pennsylvania state law for the causes of action asserted by [the plaintiff], and if the claims for punitive damages are not otherwise "patently frivolous and without foundation," *then the pleadings satisfy the necessary amount in controversy.*" (Response in Opposition to Plaintiff's Motion to Remand, at 1-2, quoting *Golden v. Golden*, 382 F.3d 348, 356 (3d Cir.2004) (emphasis added by Defendant). Put more simply, Defendant argues that "*Golden* stands for the proposition that if a plaintiff seeks punitive damages in his complaint, the amount in controversy requirement is satisfied regardless of the other facts at hand." (Response in Opposition, at 2.)

Defendant thus contends that it need not come forth with any evidence to support the claim that the jurisdictional amount is sufficient. (Response in Opposition, at n.1 ("because the claim for punitive damages meets the amount in controversy requirement as a matter of law, no factual support is needed beyond the mere assertion that Plaintiff did, in fact, seek punitive damages in the complaint.") Defendants are true to this argument as they offer nothing other than the fact of the punitive damages claim as proof "to a legal certainty that the amount in controversy exceeds the statutory threshold." *Morgan*, 471 F.3d at 474.

Plaintiff argues that Defendant has failed to meet its burden of proving to a legal certainty that the amount in controversy threshold has been met. He notes that where defendant has removed the case based on an assertion of diversity jurisdiction that "'there is a strong presumption that the plaintiff has not claimed an amount large enough to confer jurisdiction on federal courts.'" (Plaintiff's Brief in Support of Motion to Remand, at 4,

4

quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 290 (1938).)  He explains that he filed this action in state court, and as he is permitted to do, he set forth his claim for damages in a manner so as to "preclude mandatory arbitration of [his] claims under the local rules for the Court of Common Pleas of McKean County, Pennsylvania." (Affidavit of Richard W. Mutzabaugh, Esquire, May 18, 2007, at ¶ 5, Doc. 10.) He further asserts that his "damages are based almost entirely on the damage to his reputation as he was able to secure employment, albeit at a significantly lesser rate of pay, shortly after his termination by Defendant" and that his "damage claim does not exceed $75,000." (Affidavit of Scott Lupole, May 18, 2007, at ¶¶ 5-6; Mutzabaugh Affidavit, at ¶¶ 5-6.) He thus concludes that since Defendant offers no evidence to substantiate that Plaintiff's compensatory and punitive damages do exceed the jurisdictional amount, remand is appropriate.

## III. Discussion

The first issue we must address is Defendant's argument that our *only* issue is a question of law whether Plaintiff's punitive damages claim is valid; that is, not "patently frivolous and without foundation." Next, we address Defendant's argument that Plaintiff's affidavits are irrelevant to our inquiry. Finally, we address the central question of whether Defendant has met its burden of establishing diversity jurisdiction.

### A. Whether a Valid Punitive Damages Claim is Sufficient to Establish the Amount In Controversy

According to Defendant, if we find that Plaintiff's punitive damages claim is valid, then jurisdiction in this Court is proper. Defendant relies on the *Golden* case, arguing that it "stands for the proposition that if a plaintiff seeks punitive damages in his complaint, the amount in controversy requirement is satisfied regardless of the other facts at hand." (Response in Opposition, at 2.) Here, Plaintiff does not contest this point as he correctly believes that he has asserted a valid punitive damages claim. Thus, Defendant would argue that our task is done and jurisdiction is proper. We disagree.

Taking Defendant's statement of the law as true would mean that every state law claim

5

that seeks valid punitive damages is a federal claim when diversity of citizenship exists. Even if the "reasonable reading of the value of the rights being litigated" was $1.00 in compensatory damages, the action would be a federal case according to Defendant so long as valid punitive damages are also sought. This position is not supported by case law.

The relevant law concerning when a defendant can remove a state court case to federal court based on diversity jurisdiction is well-settled. The basic rule that a validly plead punitive damages claim can be aggregated with other claims of damage when determining whether the jurisdictional amount has been met is longstanding. *See Bell v. Preferred Life Asur. Soc'y*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount"); *Scott v. Donald*, 165 U.S. 58, 89-90 (1896) ("that where exemplary damages beyond the sum necessary to give a Circuit Court of the United States jurisdiction are claimed in an action for a malicious trespass, the court should not dismiss the case for want for jurisdiction simply because the record shows that the actual injury caused to the plaintiff by the trespass was less than the jurisdictional amount"), citing *Barry v. Edmunds*, 116 U.S. 550 (1885) (citing numerous cases that allow "'exemplary, punitive, or vindictive'" damages against a defendant "'having in view the enormity of his offence rather than the measure of compensation to the plaintiff'", at 562, quoting *Day v. Woodworth*, 13 How. 362, 371 (1851); and *Wilson v. Daniel*, 3 Dall. 401, 407 (1798) (noting that in a bond action "the principal and interest are put in demand and the plaintiff can recover no more," even if he claims more, but in an action of trespass, assault and battery, "where the law prescribes no limitation as the amount to be recovered and the plaintiff has a right to estimate his damages at any sum, the damage stated in the declaration is the thing put in demand.").

In light of this longstanding precedent, it is no surprise that the United States Court of Appeals for the Third Circuit's has held that it would not be proper to consider punitive damages when the claim is "patently frivolous and without foundation." *Gray v. Occidental Life Insurance Co.*, 387 F.2d 935, 936 (3d Cir. 1968). Likewise, we have the unsurprising

rule of law that a "patently frivolous and without foundation" punitive damages claim is one where punitive damages are unavailable as a matter of state substantive law. *Packard*, 994 F.2d at 1046; *Gray*, 387 F.2d at 936. Although using less straightforward language, the United States Supreme Court has been applying this rule for two centuries.

Much of the case law in this area has concerned the question of whether state substantive law allowed for, or would allow for, punitive damages under the particular circumstances of each case. For example, in *Golden*, relied upon by Defendant, the Court predicted that "Pennsylvania courts would not bar the recovery of punitive damages in this action." *Golden*, 382 F.3d at 355-357.

Turning to *Golden* case, it is clear that the Court did include language that appears to be supportive of Defendant's position. First, the *Golden* Court concluded its review of the relevant law with the following statement:

> If appropriately made, therefore, a request for punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum.

*Id.* at 355. This sentence is not supported by citation to any authority, most likely because the rule of law has simply not been phrased in such a way. In any event, the key word in the sentence is "generally." Without that term, the rule of law would be as Defendant contends: that a valid request for punitive damages will satisfy the amount in controversy requirement. However, the *Golden* Court took the above pronouncement one step further after it found that plaintiff's damages, absent consideration of punitive damages, fell below the requisite jurisdictional amount. The Court restated the rule of law as follows:

> If punitive damages are available under Pennsylvania state law for the causes of action asserted by the Appellants, and if the claims for punitive damages are not otherwise "patently frivolous and without foundation," then the pleadings satisfy the necessary amount in controversy.

*Id.* at 356, quoting *Packard*, 994 F.2d at 1046. The citation to *Packard* appears to only be to support the quoted phrase as we cannot find support for the concluding phrase, "then the pleadings satisfy the necessary amount in controversy," in *Packard*. But if this was all we had

7

to go on then we would agree with Defendant's position. However, our review of *Packard* decided, before *Golden*, and *Morgan*, decided after Golden, persuade us that Defendant's position is in error.

In *Packard*, the Court stated the already established rule that if punitive damages "are unavailable as a matter of law, that claim must be stricken from the amount in controversy." *Packard*, 994 F.2d at 1046, citing *Gray*, 387 F.3d at 936. However, the *Packard* Court did not hold that if punitive damages *are available* as a matter of law, that alone satisfies the amount in controversy. To the contrary, the *Packard* Court implied that there is no automatic jurisdictional ride based solely on a legally valid punitive damages claim by stating that "when it appears that [a punitive damages] claim comprises the bulk of the amount in controversy and may have been colorably asserted solely or primarily for the purpose of conferring jurisdiction, that claim should be given particularly close scrutiny." *Packard*, 994 F.2d at 1046, citing *Zahn v. International Paper Co.*, 469 F.2d 1033, 1033-34 n.1 (2d Cir. 1972), affirmed, 414 U.S. 291 (1973).

Once again, this view is supported by earlier Supreme Court precedent. In *Barry*, the Supreme Court stated that if a plaintiff could validly recover the amount necessary to sustain diversity jurisdiction, and the plaintiff claims that amount, diversity jurisdiction is established unless "'the amount of damages stated in the declaration was colorable, and had been laid beyond the amount of a reasonable expectation of recovery, for the purpose of creating a case.'" *Barry*, 116 U.S. at 561 (quoting *Wilson*, 3 Dal. at 407.) Thus, we believe that the relevant case law requires us to do more than simply determine if a plaintiff's claim for punitive damages is available under Pennsylvania state law.

Our view is also supported by *Morgan*, decided after *Golden*, in which the Third Circuit Court essentially answered in the negative the question of whether a valid claim for punitive damages is all that is needed to establish the amount in controversy:

> The defendants argue in conclusory fashion that the plaintiff will certainly seek an award of millions of dollars in punitive damages. The defendants then cite this Court's decision in *Golden v. Golden*, 382 F.3d 348 (3d Cir.2004), for the

8

> proposition that a demand for punitive damages will generally satisfy the amount in controversy requirement because it cannot be said to a legal certainty that the value of the plaintiff's claim is below the statutory minimum. This reliance on *Golden* is misplaced. The plaintiffs in *Golden* did not limit their damages as the plaintiff here ostensibly did. Moreover, it was the plaintiffs in *Golden* who sought federal jurisdiction under 28 U.S.C. § 1332. Finally, the defendants simply failed to prove what possible exposure existed with respect to punitive damages so as to satisfy any portion of the $5 million amount in controversy requirement.

*Morgan*, 471 F.3d at 475. Had the Third Circuit Court thought that *Golden* stood for the conclusory proposition that all that is needed for diverse parties to meet the amount in controversy requirement is a valid claim for punitive damages, it would not have said that the defendants reliance on *Golden* was misplaced.

The *Morgan* Court set forth three reasons why defendants' reliance on *Golden* was misplaced. First, it noted that the *Golden* plaintiffs did not limit their damages, whereas the plaintiffs in *Morgan* did.

Second, the *Morgan* Court noted that *Golden* was distinguishable in that the *plaintiffs* sought federal jurisdiction. Thus, in *Golden* the burden of establishing jurisdiction was on the plaintiffs. Here, the burden is on the removing Defendant to show to a legal certainty that the amount in controversy threshold has been met. In contrast, when the plaintiff seeks federal jurisdiction "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal . . . . [or] from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, . . . ." *Red Cab*, 303 U.S. at 288-289.

Finally, and most significantly, the *Morgan* Court noted that the defendants had "failed to prove what possible exposure existed with respect to punitive damages so as to satisfy any portion of the $5 million amount in controversy requirement." *Morgan*, 471 F.3d at 475. We view this statement by the Third Circuit Court as an explicit repudiation of Defendant's claim that it need offer nothing more than the assertion that Plaintiff did, in fact, seek punitive damages in the complaint. Therefore, the fact that plaintiff has stated a valid punitive damages claim does not mean that the amount in controversy is satisfied. Instead, we

must "assess the claims and attempt to translate those claims into monetary sums." *Samuel-Bassett*, 357 F.3d at 398-99.

### B. Plaintiff's Affidavits

The next issue we must address before turning to an assessment of Plaintiff's claims is Defendant's contention that the affidavits submitted by Mr. Lupole and his attorney in support of the motion to remand are irrelevant and of no legal significance. In support of this argument, Defendant relies on *Angus*, 989 F.2d at 145 and *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 667 (3d Cir. 2002).

In *Angus*, the Court assumed that the Complaint asserted a claim for compensatory damages in excess of $20,000 and a claim for punitive damages in excess of $20,000. 989 F.2d at 145. Therefore, Angus argued that the case should be remanded since her total stated claim of $40,000 did not meet the jurisdictional amount, at the time, of $50,000. The *Angus* Court, however, explained that "the amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." 989 F.2d at 146 (citations and quotations omitted). Since Angus sought in excess of $40,000, "the district court properly made an independent appraisal of the value of the claim" and reasonably found that "the actual amount in controversy was greater than $50,000." *Angus*, 989 F.2d at 146. Significantly, the district court appraised the reasonable value of the claim with the aid of the Defendant's "assessment of the value of the claim." *Angus*, 989 F.2d at n.3 & 144. In other words, the Defendant offered support for its assertion that the amount in controversy of Plaintiff's claims was sufficient for diversity jurisdiction.

With regard to Angus's stipulation that her damages do not exceed $50,000, the Third Circuit Court stated that the stipulation had "no legal significance because a plaintiff following removal cannot destroy federal jurisdiction simply by amending a complaint that initially satisfied the monetary floor." *Angus*, 989 F.2d at 145 (citations omitted). The Defendant in removing the case to federal court had established diversity jurisdiction by including an affidavit with its assessment of the value of Angus' claim, and the Angus Court

10

noted that "there was nothing speculative in [Defendant's] assessment of the value of Angus's claims." *Angus*, 989 F.2d n.3. Here, Defendant removed this case relying solely on Plaintiff's assertion of a punitive damages claim to establish the amount in controversy, and offered nothing to support an assessment of the value of Plaintiff's claims. Morever, the *Angus* Court explained as follows:

> We do indicate, however, that where a complaint is ambiguous as to the damages asserted and the controversy seems small, it is conceivable that a court justifiably might consider a subsequent stipulation as clarifying rather than amending an original pleading. There is, after all, a distinction between explaining and amending a claim.

*Id.*

In *Werwinski*, the district court found the amount in controversy was met, in part, because the plaintiffs were entitled to claim damages based on the purchase price of their automobiles. The plaintiffs argued that the district court erred because the plaintiffs "indicated in their motion to remand that they were seeking only repair costs and that 'individual claims for compensatory damages[] will rarely exceed $2,000, and will not exceed $3,000." *Werwinski*, 286 F.3d at 667 (quoting Plaintiffs' Motion for Remand.) The Third Circuit Court pointed out, however, that the plaintiffs' "Prayer for Relief" sought recovery for compensatory damages *and* all or part of the sums plaintiffs paid to purchase or lease their automobiles, as well as any ill-gotten profits the defendant received from the sale or lease of the vehicles. *Werwinski*, 236 F.3d at 666-667. Therefore, the complaint itself, by including these provisions, "clearly leaves the door open for [plaintiffs] later to demand reimbursement for the purchase price of the cars." *Werwinski*, 236 F.3d at 667. Plaintiffs' stipulation as to their compensatory damages was in fact an attempt to amend the complaint by disavowing the damages they actually claimed. Notably, the Appeals Court stated that had plaintiffs 'Prayer for Relief" not included the requests for damages based on the purchase price of the vehicles "then we might say that appellants' argument has some merit. *Werwinski*, 236 F.3d at 667.

The two seven-paragraph affidavits submitted by Plaintiff and his attorney in this case do not attempt to amend the complaint, or remove a claim that was plead in the complaint, or

11

"destroy federal jurisdiction simply by amending a complaint that initially satisfied the monetary floor." *Angus*, 989 F.2d at 145. There is nothing in the first five paragraphs that could not be discerned from a reading of the complaint. Plaintiff's stipulation in paragraph 7, that his "damage claim does not exceed $75,000" is the very issue for the Court to decide. *Morgan*, 471 F.3d at 474-475 (court must look to see if the plaintiff's actual monetary demands in the aggregate exceed the threshold, irrespective of whether the plaintiff states that the demands do not). Thus, the only new information comes from paragraph 6, which states that Mr. Lupole's "damages are based almost entirely on the damage to his reputation as he was able to secure employment, albeit at a significantly lesser rate of pay, shortly after his termination by Defendant." (Lupole Affidavit, at ¶ 6; Mutzabaugh Affidavit, at ¶ 6.) We find that Plaintiff's stipulation in paragraph 6 clarifies and explains rather than attempts to amend his complaint. In fact, it is clear from the complaint that Mr. Lupole's damages are based almost entirely on damage to his reputation since he did in fact receive employment, thereby limiting his compensatory damages. What is clarifying, however, is Mr. Lupole's stipulation that he secured employment "shortly after his termination,"

### C. Assessment of the Value of Plaintiff's Claims

In the present case, Mr. Lupole seeks compensatory damages for his wrongful discharge. He asserts that he was making $41,000 annually when he was terminated. He was terminated on March 3, 2006, and he filed the instant complaint in state court on April 2, 2007, approximately 13 months after he was fired. Thus, if he had been unable to obtain employment during that entire time and had no income to set off his lost income from his prior job, he would be looking to recover a maximum of $44,147 in compensatory damages. However, we know that Mr. Lupole was able to obtain similar employment at $28,000 annually, and thus his compensatory damages are less than $44,147. In fact, his damages are much less than $44,147, because Mr. Lupole clarified that he obtained employment shortly after his termination. Neither Plaintiff nor Defendant has provided us with the date that Mr. Lupole began his new employment. Although it is difficult for the Court to state with

12

certainty what point equals "shortly after" the termination, we are able to make "a reasonable reading of the value of the rights being litigated." *Angus*, 989 F.2d at 146.

Had Mr. Lupole obtained his new employment six months after his old job ended, his compensatory damages would be approximately $26,584. This amount consists of $20,500 for the first six months plus $6,584, the difference between what he would have made and what he did make for the last seven months before the Complaint was filed. We have no hesitation in finding that no reasonable person would consider obtaining new employment six months after termination to be gaining a new job "shortly" after you lost your old job. In contrast, had Mr. Lupole obtained employment within one month, a time frame that would reasonably be considered "shortly after" his termination, his compensatory damages would be $16,417.

At what amount between $16,417 and $26,584 then do we find the reasonable reading of Plaintiff's claim? In our own mind, finding a new job "shortly after" being fired from a job certainly means that one finds a new job in less than two months, which would place his compensatory damages at approximately $18,758. Keeping in mind that we do not know what Mr. Lupole means by that term, we find that the outer limit of a reasonable time frame to be considered "shortly after" is reached once three months have passed since being fired from a job, placing Mr. Lupole's compensatory damages at approximately $21,091. Adding to this amount any damages due to lost benefits we find that a reasonable reading of the value of Mr. Lupole's wrongful termination claim, erring on the generous side, places Mr. Lupole's total compensatory damages at approximately just over $25,000.

Defendant must now show to a legal certainty that its exposure to defamation and punitive damages amount to more than two-thirds of the $75,000 jurisdictional amount. Because compensatory damages do not comprise the bulk of the amount in controversy combined with the fact that Defendant has offered nothing to substantiate the value of Plaintiff's claims, this is a case requiring "particularly close scrutiny." *Packard*, 994 F.2d at 1046. In contrast, when the amount in controversy without considering punitive damages is

a significant portion of the jurisdictional amount, the assertion of a valid punitive damages claim alone may be sufficient to satisfy the amount in controversy. For example, in a case from our own district, relied upon by Defendant, Chief Judge Ambrose cited *Golden* in finding that the plaintiff's claim for punitive damages was sufficient to put the amount in controversy over the jurisdictional limit. *Dennis Bruce Landscape Management Services, Inc. v. Merchant's Mutual Insurance Company*, 2007 WL 141056 (W.D.Pa. Jan. 17, 2007). In so doing she stated that "[w]hen [plaintiff's] request for punitive damages is considered in conjunction with the demand for *$74,545* as set forth in the Complaint, I cannot state with a legal certainty that the value of the claim is below the statutory minimum." *Dennis Bruce*, 2007 WL 141056, *2 (emphasis added). Thus, when faced with a claim for compensatory damages that fell short of the jurisdictional amount by $546.00, the Court aggregated the plaintiff's punitive damages claim to find that the amount in controversy was met.

We examine Plaintiff's open-ended defamation and punitive damages claims together since under Pennsylvania law a punitive damages claim is not a separate claim, and because the claims rely on the same factual scenario. We view the allegations in the complaint in favor of Plaintiff, and thus we assume that Defendant has defamed Plaintiff as stated in his complaint.

Plaintiff's defamation claim is stated in general terms and does not specifically identify what defamatory statements were made, who made them, and to whom they were made. Thus, it's likely that this claim would be subject to a rule 12(e) motion for a more definite statement were jurisdiction in federal court sustained. *See Hides v. CertainTeed Corp.*, 1995 WL 458786 (E.D.Pa. 1995) (granting motion for more definite statement on plaintiff's defamation claim under Rule 8(a).) However, for our purposes we presume that plaintiff claims that an employee or employees of Defendant posted at his workplace a notice that stated, in effect, "We fired Scott Lupole because he doctored his hours," and that this notice was read by other employees of the Defendant. In addition, we presume that members of management made unspecified but similar statements to Plaintiff's former co-workers

14

(presumably some of the same persons who would have read the posted notice).

Even were Plaintiff to succeed on his defamation claim it would be unreasonable to believe that he would receive more than a minimal damage award. Under Pennsylvania law "'[d]efamation is a communication which tends to harm an individual's reputation so as to lower him or her in the estimation of the community or deter third persons from associating or dealing with him or her.'" *Constantino v. University of Pittsburgh*, 766 A.2d 1265, 1270 (Pa.Super. 2001) (citations omitted). Certainly communicating to others that Plaintiff falsely reported hours, when he did not, would tend to harm his reputation. However, in this case it is doubtful that there would be employees of Defendant who were unaware of the Defendant's reasons for terminating Plaintiff until the notice was posted. In addition, the communications were limited to former co-workers, as Plaintiff has not alleged that the defamatory information was published outside his former workplace. More significantly, however, whatever damages Plaintiff suffered from Defendant's defamatory communications they were not such that his reputation was so harmed or the estimation of him in the community was so lowered that he was unable to quickly gain another position in the same industry.

The same rationale applies to Plaintiff's punitive damages claim. Plaintiff has stated a valid punitive damages claim since a jury could find that Defendant did fire Plaintiff for the false reason that he "doctored" his hours and then posted a notice at Defendant's place of employment stating this false reason for his termination. Thus, we cannot say that the claim is frivolous or without foundation as a matter of law on the face of the complaint. However, it is not reasonable that Plaintiff would receive an award of punitive damages, that when added to compensatory damages, would meet the jurisdictional amount.

> "[E]stimations of amounts recoverable must be realistic. The inquiry should be objective and not based on fanciful, pie-in-the-sky, or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated."

*Baney v. Trans-Union LLC*, 2007 WL 1098523, *4 (M.D.Pa. 2007), quoting *Samuel-Bassett*, 357 F.3d at 403. We find that an award of punitive damages sufficient to meet the statutory

15

amount in controversy, when added to Plaintiff's compensatory damages along with any award given solely for the defamation, would be unreasonable. We therefore find that Defendant has failed to satisfy its burden of proving to a legal certainty that the amount in controversy exceeds the statutory threshold.

This case differs from one like *Javorski v. Nationwide*, 2006 WL 2225851, (M.D.Pa. Aug. 2, 2006), because in that case the Court found that the defendant did meet its burden of establishing the amount in controversy by submitting a calculation and rationale for an award of punitive damages to which Plaintiff chose not to respond. *Javorski*, 2006 WL 2225851, *6. Here, however, the Defendant "simply failed to prove what possible exposure existed with respect to punitive damages so as to satisfy any portion of the [$75,000] amount in controversy requirement." *Morgan*, F.3d at 475. Accordingly, the Court will grant Plaintiff's motion to remand.

In coming to this conclusion we emphasize that Defendant has offered no evidence regarding the reasonable value of the rights being litigated. Defendant has not provided any measure of the damages and offered nothing to support its claim that the total damages alleged exceeds $75,000. Given that all doubts in removal should be resolved in favor of remand, and with nothing from the Defendant to support a determination to a legal certainty that Plaintiff's claim reasonably exceeds $75,000, the result we reach is in keeping with "the Congressional intent to limit jurisdiction in diversity cases." *Samuel-Bassett*, 357 F.3d at 403.

Given our disposition of the amount in controversy question we need not address Plaintiff's alternative argument for remand.

## IV. Conclusion

Defendant has failed to establish to a legal certainty that the amount in controversy exceeds $75,000. Therefore, we will grant Plaintiff's motion to remand this case to the Court of Common Pleas of MckEan County, Pennsylvania.

An appropriate Order follows.

October 11, 2007
Date

Maurice B. Cohill, Jr.,
Senior United States District Judge